COMMONWEALTH vs. JOHN T. DONOVAN.

Norfolk.  September 19, 1983. — November 10, 1983.

Present: BROWN, DREBEN, & KASS, JJ.

*Firearms.  Practice, Criminal,* Required finding, Instructions to jury. *Evidence,* Redirect examination, Explanation of previous testimony. *Witness,* Explanation of previous testimony.

At the trial of a complaint charging the defendant with carrying a firearm in a vehicle in violation of G. L. c. 269, § 10(a), evidence that a police officer found a handgun under the front seat of an automobile in which the defendant was sitting, that the automobile had been under the defendant's control for about sixteen hours, and that under the front seat with the gun were bags of pills which the defendant admitted belonged to him warranted a finding that the defendant had knowledge of the presence of the weapon. [84-86]

At the trial of a complaint charging the defendant with unlawfully carrying a firearm in a vehicle, it was reversible error to exclude certain questions to the defendant on redirect examination concerning a prior conviction of the defendant for a drug offense, where the questions were aimed not at probing the defendant's guilt or innocence in the prior matter, but sought to explain an inconsistency between the defendant's testimony on direct and cross-examination which, if unexplained, marked the defendant a liar. [86-88]

COMPLAINT received and sworn to in the Western Norfolk Division of the District Court Department on December 7, 1981.

On appeal in the Northern Norfolk Division for trial by jury, the case was tried before *St. Cyr,* J.

*Edward Joseph Giandomenico* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

KASS, J.  John T. Donovan, the defendant, was convicted by a jury of six of unlawfully carrying a firearm under his control in a vehicle.  G. L. c. 269, § 10(a), as amended

through St. 1978, c. 175, § 1. On appeal he presses five claims of error, four of which we reject. We do conclude that a line of questions designed to rehabilitate the defendant's credibility was improperly excluded and reverse for that reason.

1. *Required finding of not guilty.* Defense counsel's motion for a required finding of not guilty, Mass.R.Crim.P. 25, 378 Mass. 896 (1979), was denied. At the close of the Commonwealth's case in chief, *Commonwealth* v. *Bongarzone,* 390 Mass. 326, 348 (1983), the jury had received evidence from which it could conclude the following. On December 6, 1981, Officer Accord of the Wrentham police, acting on a dispatch, found the defendant in a car, slumped over the steering wheel. It was 2:00 A.M. The headlights of the car were on, its engine was running, its front end was partially on the pavement of South Street and its rear end was in mud and snow up to the axle. Several shakes by Officer Accord woke the defendant up. To test a well grounded suspicion that the defendant was drunk, Officer Accord ordered the defendant from the car, and, having satisfied himself that the defendant was, indeed, intoxicated, arrested him and gave him a Miranda warning.[1]

Events rapidly unravelled as to the defendant. He was unable to produce a driver's license and explained that a registration for the car was either over the driver's visor or in the glove compartment. Officer Accord rummaged through the glove compartment for the registration, an enterprise in which the defendant had acquiesced. As the officer maneuvered himself out of the car he stepped on something, and, he explained, anxious that he might do damage, explored the car floor with a flashlight. He saw a glassine bag containing blue pills on the floorboard and a like bag protruding from under the driver's seat. That discovery encouraged Accord to feel around under the driver's seat and there he felt several more bags. Next to

---

[1] The record does not disclose the cause which underlay the arrest, presumably it was driving while drunk. G. L. c. 90, § 24(1). There is no challenge to the arrest.

them he felt a hard object which he correctly suspected was a handgun.

The defendant, Donovan, had no license for the weapon. He admitted the pills were his and denied any knowledge of the weapon. The automobile belonged to a woman friend (later his wife), who testified that she did not own a handgun and that Donovan had borrowed the car from her at approximately 10:00 A.M. the previous morning.

In *Commonwealth* v. *Almeida,* 381 Mass. 420 (1980), upon which Donovan rests his entitlement to a required finding of not guilty, the police came upon a parked car with the engine running. When Almeida failed to produce a registration, the police ordered him out of the car. The interior light went on as Almeida left the car and the inquiring police officer saw a gun holster under the front seat. The officer lifted a console on the front seat and found a weapon. Almeida had borrowed the car that evening. *Id.* at 421-423. Evidence of those facts, the court concluded, was insufficient to warrant a reasonable inference of personal knowledge of the presence of a gun. *Id.* at 423. See *Commonwealth* v. *Latimore,* 378 Mass. 671, 677 (1979). "There was no evidence of the size of the console, or whether the gun was easily visible . . . . The jury would have had to speculate that the defendant knew the gun was in the covered console. . . ." *Commonwealth* v. *Almeida, supra* at 423.

We think, however, that this case is more like *Commonwealth* v. *Albano,* 373 Mass. 132 (1977), where the circumstances (driving without lights, rear license plate obscured, nervousness of defendant when questioned, protrusion of gun butt from seat) were held sufficient to allow the jury to infer knowledge of the weapon.

Here, bags of pills which the defendant admitted were his (he identified them as "speed," but they were, in fact, inert counterfeit drugs) surrounded the weapon. If he put the pills under the seat, it could reasonably be inferred that he put the weapon there or had become aware of its presence. He had been in control of the car for an entire day and

night. The owner of the car disavowed ownership or knowledge of the weapon. Considered in a light most favorable to the Commonwealth, the evidence was sufficient to satisfy a rational jury of the elements of the crime charged — carrying a firearm under his control in a vehicle — beyond a reasonable doubt. *Commonwealth* v. *Latimore*, 378 Mass. at 676-678 (1979). *Commonwealth* v. *Burrell*, 389 Mass. 804, 805 (1983).

2. *Refusal to allow rehabilitation.* Donovan took the stand in his defense. He was asked on direct examination whether he had ever been convicted of any crime and answered, "No, I haven't." Defense counsel also asked, "Other than appearances here in court, have you ever seen that handgun?" Donovan replied he had not, and, in response to a question whether he knew how to load that handgun, he said, "Absolutely not." He stoutly affirmed that he knew he was under oath.

The prosecutor saw his opening. On cross-examination, he asked Donovan if on April 20, 1982 (six months before his trial on the firearm charge), he had been found guilty of possession with intent to distribute "a certain counterfeit drug . . . speed?" Donovan answered, "yes," and the prosecutor pressed the point.

Q. (By the prosecutor): "So when you were asked by your defense counsel whether or not you had a record and your answer to him was no, that was untrue wasn't it?"

A. "I thought . . ."

Q. "That was untrue, wasn't it?"

A. "Yes."

At once defense counsel, on re-direct, sought to rehabilitate the severely impeached credibility of his client through a series of questions designed to elicit that the April, 1982, drug conviction and the firearm charge for which the defendant was being tried stemmed from the same incident. Those questions were all excluded, including the following:

Q. "When you were found guilty of that, was that part of this present charge right here?"

Q. "Before the night in question here, had you ever been arrested?"

Several times the judge explained that he was sustaining the Commonwealth's objections because the prior conviction was admitted solely to impeach the credibility of the witness. That limited purpose is, indeed, the basis of inquiry about prior convictions. G. L. c. 233, § 21. It appears that the judge's exclusion of the questions put to Donovan by his lawyer was based on the general rule that a witness against whom a conviction is introduced may not explain the circumstances attending that conviction. *Lamoureaux* v. *New York, N.H. & H. R.R.*, 169 Mass. 338, 340 (1897). *Commonwealth* v. *Callahan*, 358 Mass. 808 (1970). Were it otherwise, the guilt, innocence, or culpability of the witness in the prior case would, in effect, be retried. Here, however, defense counsel's questions were aimed not at probing Donovan's guilt, innocence, or culpability in the prior matter, but sought an explanation of an inconsistency between Donovan's testimony on direct and cross-examination which, if unexplained, marked Donovan as a brazen — and reckless — liar.

An impeached witness ought, generally, on redirect be permitted to reconcile an apparent contradiction. *Commonwealth* v. *Smith*, 329 Mass. 477, 479-481 (1952). "The contradictory statement indicates on its face that the witness has been of two minds on the subject, and therefore that there has been some defect of intelligence, honesty, or impartiality on his part; and it is conceivable that the inconsistency of the statements themselves may turn out to be superficial only, or that the error may have been based not on dishonesty or poor memory but upon a temporary misunderstanding." 3A Wigmore, Evidence § 1044 (Chadbourne rev. 1970), quoted in *Commonwealth* v. *Smith*, *supra* at 480, based on the same text appearing in an earlier edition of that work. See also, *Commonwealth* v. *Fatalo*, 345 Mass. 85, 86-87 (1962) (defendant has a right, on redirect examination, to explain an omission that seriously impeached his alibi). Contrast *Commonwealth* v. *Barros*,

5 Mass. App. Ct. 887 (1977), approving exclusion of questions calling upon a witness to comment on his own testimony when the question was *not* designed to elicit an explanation of differences from prior testimony.

In an effort to escape the force of *Commonwealth* v. *Smith*, 329 Mass. at 479-481, the Commonwealth makes the distinction that in *Smith* the court had the benefit of an offer of proof while in the instant case the record discloses none. There may have been an effort to make an offer of proof because, after his first two stabs at rehabilitative questions, defense counsel asked to approach the bench. There is, however, no record of the bench conference. We do not, in the absence of a proper record, infer that an offer of proof was made, and need not do so because it is apparent from the questions defense counsel attempted to ask directly before and after the bench conference that those questions sought a response that the drug charge and firearms charge grew from the same incident. Cf. *Ratner* v. *Canadian Universal Ins. Co.*, 359 Mass. 375, 385 (1971). See rule 103(a)(2) of the Proposed Massachusetts Rules of Evidence. That information, at least arguably, would explain why, in the circumstances, a lay person would testify he had never before been convicted of a crime.

3. *Other issues.* Remaining claims of error, should the issues arise on a new trial, are susceptible to summary treatment. (a) No error attended the judge's refusal to instruct the jury that they might consider the defendant's intoxication (from alcohol and drugs) in deciding whether he knew about the presence of the firearm. The rejected instruction was substantially the same as that held to be correctly refused in *Commonwealth* v. *Sheehan*, 376 Mass. 765, 766 (1978). See also, *Commonwealth* v. *Loretta*, 386 Mass. 794, 799-800 (1982); *Commonwealth* v. *Kalinowski*, 12 Mass. App. Ct. 827, 831 (1981). (b) Read as a whole, the judge's charge adequately instructed the jury on the reasonable doubt standard and explained with admirable lucidity what an inference was. See *Commonwealth* v. *Hicks*, 377 Mass. 1, 9 (1979). There is nothing in the defendant's argu-

ment that the judge had, in effect, charged the jury that there were necessary inferences to be made. (c) The judge's charge on inferring control was accurately phrased and nowise like the charge disapproved in *Commonwealth* v. *Gray,* 5 Mass. App. Ct. 296, 299 (1977).

*Judgment reversed.*

*Verdict set aside.*