COMMONWEALTH *vs.* SHAWN M. DICKINSON.

Bristol.  February 4, 1985. — May 6, 1985.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, NOLAN, & LYNCH, JJ.

*Homicide. Practice, Criminal*, Conduct of prosecutor. *Witness*, Explanation of previous testimony, Cross-examination. *Evidence*, Cross-examination, Explanation of previous testimony. *Error*, Harmless.

At the trial of a murder case, any improprieties arising from the prosecutor's questioning of a key defense witness with regard to the truth of the witness's inconsistent former and present testimony and the prosecutor's suggestion that the witness had perjured himself did not, in the circumstances, require reversal of the murder conviction, especially in light of the overwhelming evidence of the defendant's guilt. [705-708]

INDICTMENT found and returned in the Superior Court Department on August 5, 1980.

The case was tried before *Robert L. Steadman*, J.

*Michael D. Cutler* for the defendant.

*Dana A. Curhan*, Assistant District Attorney, for the Commonwealth.

HENNESSEY, C.J. The defendant is appealing his conviction of murder in the first degree. He contends that: (1) the prosecutor engaged in improper impeachment of a key witness by asking that witness to comment, during cross-examination, on the credibility of his former and present testimony and by suggesting that witness's criminal liability for perjury; and (2) the trial judge committed reversible error by failing to deter the allegedly improper impeachment or to give prompt curative instructions regarding that impeachment. While we agree that the prosecutor overreached in the course of conducting his cross-examination, there was no resulting prejudice to the defendant which requires a reversal of his conviction.

The defendant was convicted of murdering Frank J. Sikorski on the morning of July 31, 1980. The defendant, his brother

Derrick Dickinson, and a friend, Kevin Coe, had been drinking alcohol for several hours before encountering Sikorski outside a bar at approximately 1 A.M. Although Sikorski did not know the three men, he agreed to give them a ride to their destination. It is uncontested that in the course of that ride Sikorski was murdered. Derrick Dickinson,[1] the Commonwealth's key witness, testified that the defendant and Coe attacked the victim twice, that Sikorski died after the second beating, and that the three men then drove to an isolated location where they disposed of the body. At approximately 4 A.M., after a high speed chase with State police, they were apprehended in the victim's car. The defendant, who was driving, had bloodstains on his bare chest, jeans, and boots. His bloody shirt was later found at the site of the second and fatal attack on Sikorski.

Coe, who pleaded guilty to murder in the second degree, was the only defense witness. He testified that the defendant had participated in the initial beating of Sikorski but that he (Coe) alone had administered the second set of fatal blows. During Coe's cross-examination, the prosecutor questioned him about the inconsistencies between this testimony and earlier statements he had given police regarding Sikorski's death.[2] The relevant portions of Coe's cross-examination, including the objections of defense counsel and rulings of the trial judge, appear in the margin.[3]

---

[1] Derrick Dickinson pleaded guilty to manslaughter and was sentenced to the term of his predisposition detention.

[2] At the time of his guilty plea, Coe admitted to the substance of these earlier statements, in which he claimed that both he and the defendant had beaten the victim to death.

[3]
| THE PROSECUTOR: | "You're testifying here today to help Shawn get off, aren't you?" |
| THE WITNESS: | "What I'm telling today is the truth. That's what I'm telling you." |
| THE PROSECUTOR: | "Well, then, what you are telling us is that you didn't tell the truth to the state police officers when you confessed to them, right?" |
| THE WITNESS: | "I was confused and drunk at the time." |
| THE PROSECUTOR: | "But you're saying that wasn't the truth, right?" |
| THE WITNESS: | "Right." |

The defendant did not testify at his trial. He was sentenced to life imprisonment at the Massachusetts Correctional Institution,

| | |
|---|---|
| THE PROSECUTOR: | "You're also saying that what you said under oath upstairs in this courtroom, to Judge Prince, wasn't the truth either, right?" |
| DEFENSE COUNSEL: | "I object, your Honor." |
| THE JUDGE: | "You may have it." |
| THE PROSECUTOR: | "Right? Isn't that what you are saying? When you pled guilty to murder upstairs and you told a different story than you are telling us today, you're telling us that that was untrue, right?" |
| DEFENSE COUNSEL: | "Objection, your Honor." |
| THE JUDGE: | "You may have it." |
| | . . . |
| THE PROSECUTOR: | "You're under oath today telling us a different story, aren't you?" |
| THE WITNESS: | "I am telling you the truth. What I am telling you today is the truth." |
| THE PROSECUTOR: | "What you are saying today is the truth?" |
| THE WITNESS: | "Yes. Right." |
| THE PROSECUTOR: | "You stand by that?" |
| THE WITNESS: | "Right." |
| THE PROSECUTOR: | "Would you like an opportunity to take a recess here in the trial and talk to an independent attorney about the penalties of perjury?" |
| DEFENSE COUNSEL: | "Objection, your Honor." |
| THE JUDGE: | "Sustained." |
| THE PROSECUTOR: | "What you are telling us today is the truth? You will stand by that?" |
| THE WITNESS: | "Right." |
| THE PROSECUTOR: | "Well, I guess it follows, then, that in your response to the judge's questions, you lied under oath, didn't you?" |
| THE WITNESS: | "I don't know." |
| THE PROSECUTOR: | "Well, you can't answer that question yes or no?" |
| THE WITNESS: | "I don't know." |
| THE PROSECUTOR: | "Well, it was a story different from the story you are telling here today, isn't it?" |
| THE WITNESS: | "Yes." |
| THE PROSECUTOR: | "No question they are different?" |
| THE WITNESS: | "No, sir." |
| THE PROSECUTOR: | "No question you were under oath both times, right?" |
| THE WITNESS: | "Right." |
| THE PROSECUTOR: | "No question that upstairs in that courthouse you agreed that the other version of the facts was |

Cedar Junction, for the conviction of murder in the first degree. His motion for a new trial was denied, and he appealed his conviction to this court.

The defendant argues, and the Commonwealth concedes, that it was improper for the prosecutor to suggest, especially in threatening terms, that Coe had perjured himself. The defendant also claims that the judge committed reversible error by allowing the prosecutor, over defense objections, to cross-examine Coe with regard to the truth of his former and present testimony. Upon review of the entire record, we are satisfied that, in the context of this case, reversal of the conviction is not required.

As to the accusations of perjury contained in the prosecutor's questions, defense counsel's objections were sustained before Coe could respond to the challenged questions. The judge's rulings tended to mitigate any prospect of harm to the defendant. *Commonwealth* v. *Ronayne*, 8 Mass. App. Ct. 421, 426-427

| | |
|---|---|
| | the truth, right?" |
| THE WITNESS: | "Right." |
| THE PROSECUTOR: | "Is there any question — and you are telling us now today from that witness stand that what you are saying today is the truth?" |
| THE WITNESS: | "Right." |
| THE PROSECUTOR: | "They can't both be the truth, can they?" |
| THE WITNESS: | "No." |
| THE PROSECUTOR: | "So one time or the other you lied under oath, didn't you?" |
| THE WITNESS: | "I guess I did." |
| THE PROSECUTOR: | "You are telling us that it was the other time that you lied under oath, is that what you are saying? Is that what you are saying, Mr. Coe? You certainly can answer that question yes or no, can't you?" |
| THE WITNESS: | "Yes." |
| THE PROSECUTOR: | "You are telling us that you lied under oath that other time." |
| THE WITNESS: | "I guess I did." |
| THE PROSECUTOR: | "Do you realize that you have just incriminated yourself?" |
| DEFENSE COUNSEL: | "Objection, your Honor." |
| THE JUDGE: | "Sustained, That has no —" |
| THE PROSECUTOR: | "I'm sorry." |
| THE JUDGE: | "We will take a recess." |

(1979). Although the defendant now argues that the judge should have given prompt curative instructions to the jury, his trial counsel did not request such instructions at the time. See *Commonwealth* v. *Fitzgerald*, 380 Mass. 840, 848 (1980) ("Trial counsel's failure to come to the defense of his client can only be explained by his tactical judgment that what occurred was not significantly prejudicial to his client"). Moreover, in his charge, the judge properly instructed the jury that they alone make "[t]he ultimate determination of credibility." See *Commonwealth* v. *Edgerly*, 13 Mass. App. Ct. 562, 574 (1982) (questions regarding truth of witnesses' testimony not prejudicial where jury instructed that they were "sole judges of the credibility of the witnesses").

As to the prosecutor's repetitious questions to the witness with regard to the truth of his former and present testimony, it is well established that a witness may be asked to explain inconsistencies between prior and present statements. *Commonwealth* v. *Smith*, 329 Mass. 477, 479-480 (1952). *Commonwealth* v. *Donovan*, 17 Mass. App. Ct. 83, 87 (1983). *Commonwealth* v. *Barros*, 5 Mass. App. Ct. 887, 887 (1977). However, a witness cannot be asked to assess the credibility of his testimony or that of other witnesses. *Commonwealth* v. *Long*, 17 Mass. App. Ct. 707, 708 (1984). *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 400, 401-402 (1983). *Commonwealth* v. *Barros, supra.* Consequently, it is sometimes difficult to draw a precise line between what is proper and improper in impeaching a witness with prior inconsistent statements.

Although it can be argued that, in questioning Coe repetitiously about the truth of his conflicting accounts of Sikorski's murder, the prosecutor overreached, the case is readily distinguishable from *Commonwealth* v. *Long, supra*, where on cross-examination the defendant was asked at least one hundred questions regarding the testimony of other witnesses. Upon review of the record, the court concluded that the purpose of this line of questioning was not to get the defendant to explain his own testimony, which is proper, but was rather to induce him to comment on the inconsistencies between his testimony and that of the other witnesses. *Id.* at 708-709. For that reason,

and in light of the Commonwealth's failure to provide overwhelming evidence of the defendant's guilt, the court held that the defendant was entitled to a new trial. *Id.* at 710. Here, however, it was not the prosecutor but Coe himself who opened up the credibility issue by volunteering that, in contrast to his earlier statements, "What I'm telling today is the truth." It is also evident from the record that the objectionable questions were designed to serve the proper purpose of "elicit[ing] an explanation of differences from prior testimony." *Commonwealth* v. *Donovan*, 17 Mass. App. Ct. 83, 88 (1983).

The flagrant and cynical retreat by the witness from the plea testimony he had given when his own fate was still in the balance clearly warranted an aggressive cross-examination. Even if we assume that there was overreaching by the prosecutor and that the judge failed to take adequate curative steps, reversal is not called for here. See *Commonwealth* v. *Francis*, 391 Mass. 369, 373 (1984) (single inaccurate statement in prosecutor's closing did not require reversal); *Commonwealth* v. *Storey*, 378 Mass. 312, 323-324 (1979), cert. denied, 446 U.S. 955 (1980) (prosecutor's brief improper comments not so egregious as to warrant dismissal); *Commonwealth* v. *Borodine*, 371 Mass. 1, 12 (1976), cert. denied, 429 U.S. 1049 (1977) (where prosecutorial misconduct not flagrant or persistent, no cause for reversal). Cf. *Commonwealth* v. *Smith*, 387 Mass. 900, 904-907 (1983) (deliberate and repeated improprieties by experienced prosecutor created significant danger of prejudice).

Those arguments which the defendant has raised for the first time on appeal — i.e., the judge's failure to give prompt curative instructions — are subject to review under G. L. c. 278, § 33E. The applicable standard is whether upon "review of the entire record as considered in light of the verdicts returned by the jury . . . a miscarriage of justice has occurred." *Commonwealth* v. *Johnson*, 379 Mass. 177, 182 (1979). Regardless of the standard we apply, and assuming error below, we conclude that any possible error was offset by overwhelming evidence of the defendant's guilt, and thus was not prejudicial. It is undisputed that the defendant was present when the victim

was killed; that he participated in the initial attack which disabled the victim; that he drove the victim to the murder site; ·that he helped dispose of the victim's body; and that, when apprehended, he was covered with blood. In addition, the defendant's brother testified that he had seen the defendant strike Sikorski several times during the second beating. There was also testimony that, while in pretrial detention, the defendant told a fellow inmate that Coe had agreed to plead guilty to murder in the second degree in order to help the defendant. In light of this evidence of the defendant's guilt, the prosecutor's errors would have had little practical effect on the jury. See *Commonwealth* v. *Roberts,* 378 Mass. 116, 123-124 (1979) (where overwhelming evidence of guilt, prosecutor's errors could have only minimal impact); *Commonwealth* v. *Hooks,* 375 Mass. 284, 297 (1978) (same).

In conclusion, our examination of the entire record pursuant to this court's duty under G. L. c. 278, § 33E, reveals no reason why we should disturb the jury's verdict.

*Judgment affirmed.*