## COMMONWEALTH *vs.* RAYMOND GRENIER.

Middlesex. April 5, 1993. - July 7, 1993.

Present: LIACOS. C.J , WILKINS. LYNCH. O'CONNOR. & GREANEY. JJ

*Evidence*, Admissions and confessions, Cross-examination, Judicial discretion, Bias, Admission by silence. *Constitutional Law*, Waiver of constitutional rights. *Witness*, Bias, Credibility. *Practice, Criminal*, Admissions and confessions, Instructions to jury.

The record of the hearing on a criminal defendant's motion to suppress his statements to police did not support the defendant's contention that an answer given by a police officer in response to the defendant's question about what a portion of the Miranda warning meant amounted to trickery and deception; to the contrary, the record fully warranted the motion judge's conclusion that the defendant voluntarily waived his Miranda rights. [682-684]

At a criminal trial, the judge did not abuse his discretion in limiting cross-examination on the subject of certain notes, taken by a police officer during an interview of the defendant, which were the subject of a successful pretrial motion that the Commonwealth preserve all notes concerning the defendant, but which the officer did not have with him at trial; nor did the record on review pursuant to G. L. c. 278, § 33E, permit a determination whether the defendant was significantly prejudiced by the failure of defense counsel to press for the production of the notes. [684-685]

At a criminal trial, the judge did not improperly restrict defense counsel's attempt to show bias of a prosecution witness by striking an answer given by the defendant during the defendant's direct examination, where the testimony was properly struck as not responsive to the questions asked; furthermore, where the fact of the witness's bias was shown in other evidence, the absence of the excluded evidence was not significantly prejudicial. [685-686]

At a criminal trial, the judge did not err in declining to give a requested instruction concerning the special care that the jury should apply in examining the testimony of an immunized witness who testified to incriminating statements by the defendant, where there was no arguable inference that the Commonwealth was vouching for the witness's truthfulness, and where the judge's instruction on credibility, including ref-

erences to witnesses' interests in the outcome of the case and to their possible bias, was sufficient in the circumstances. [686-687]

At a murder trial, there was no substantial likelihood of a miscarriage of justice in the scope of the judge's charge to the jury with regard to whether certain incriminating statements attributed to the defendant were made voluntarily. [687-688]

There was no merit to the contention by a criminal defendant that testimony of a police officer concerning the defendant's response to questioning at a police station, dropping his head, saying no, pausing, and then denying involvement in the crime should have been excluded from evidence on the ground that it permitted an inference of an admission of guilt from the defendant's silence after he had received Miranda warnings, where the defendant's response, viewed in its entirety, could be seen as an admission by word and deed or, at the least, an equivocal response to an accusation of guilt. [688-689]

At a criminal trial, no substantial risk of a miscarriage of justice was created by the admission, without objection, of a police officer's testimony that he told the defendant he did not believe his statement that he knew nothing of the crime, and that the defendant then became "noticeably nervous." [689-690]

Although unobjected-to testimony at a criminal trial that the defendant, who had received Miranda warnings, sought to terminate a police interview following a police officer's question whether he wanted to give the police a truthful statement as to what happened on the day of the crime should not have gone to the jury, there was no substantial likelihood of a miscarriage of justice, where any inference of an admission of guilt was not strong, where evidence of the defendant's guilt was substantial, and where the testimony was a brief event in the course of a long trial. [690-691]

INDICTMENTS found and returned in the Superior Court Department on April 10, 1986.

A pretrial motion to suppress evidence was heard by *Robert S. Prince*, J., and the cases were tried before *Robert Malcolm Graham*, J.

*Robert L. Sheketoff* for the defendant.

*Sabita Singh*, Assistant District Attorney, for the Commonwealth.

WILKINS, J. The defendant's appeal from his convictions of murder in the first degree and armed robbery presents six independent issues. We conclude that there was no reversible

error and that the defendant is not entitled to relief pursuant to G. L. c. 278, § 33E (1990 ed.).

To put the issues in perspective, we provide a brief outline of evidence that the jury reasonably could have believed. In the afternoon of November 14, 1985, the body of the victim was found behind a medical building in Lowell. He had been killed by compound fractures of his skull. The victim, who was seventy-five years old, had delivered alcoholic beverages for a Lowell package store. The defendant and others knew that the victim carried substantial amounts of money in order to cash checks for customers.

Investigation led the police later that day to premises in Lowell where they found the defendant with others. The defendant voluntarily went to the Lowell police station where during the night he was questioned about his activities on November 14. He agreed to be tested for traces of blood. Chemical tests showed traces of blood on his hands, at his forehead hairline, on the soles of his jogging shoes, and elsewhere. Blood traces found on the defendant's clothes were of the same blood type as the victim's and not that of the defendant. Barbara Peaslee, who had been at the Lowell premises where the police found the defendant, testified that the defendant had said, before the police arrived, that he had robbed someone and thought that he and an accomplice had killed the person. Although the evidence of the defendant's guilt was circumstantial, there was an ample basis for submitting the case to the jury, and the defendant does not contend otherwise.[1]

1. The defendant first challenges the denial of his motion to suppress the statements that he made to the Lowell police on November 14-15. He argues that his constitutional rights were denied by a false and misleading answer that a Lowell police officer gave to the defendant's question about what a

---

[1]In *Commonwealth* v. *Harmon*, 410 Mass. 425 (1991), this court upheld the conviction of Raymond Harmon of murder in the first degree of the victim. The circumstances of the victim's death are stated more fully in that opinion. *Id.* at 426.

portion of the Miranda warning meant. The defendant contends that the answer amounted to trickery and deception.[2]

At the hearing on the motion to suppress, Lowell police Inspector David Tousignant testified on direct examination that, after the defendant read his Miranda rights aloud from a card, Tousignant asked him if he had any questions. The defendant asked Tousignant to explain what was meant by the statement that anything he might say may be used against him. Tousignant testified that he had replied as follows: "I explained to him that we wanted to get a statement. We would like a written statement from him. That at some point when you go to court I would testify that I took whatever statement he gave us that was taken that night in our office." The defendant then signed the Miranda card, gave a statement, and consented to submit to tests for the presence of blood.

The further testimony of Tousignant is instructive in assessing the defendant's claim. On cross-examination of the officer, defense counsel returned to the question of Miranda rights and asked how Tousignant had explained to the defendant the meaning of "Anything you say may be held against you." Tousignant replied: "I told him that what I wanted, or what we wanted was to get a statement to the best his knowledge [*sic*] of his day's activities. That anything that he tells us, which will be recorded and signed by him, at some future date can be used in court. Somebody would testify in court if, in fact, if we go to court."

Nothing that Tousignant told the defendant was erroneous. Tousignant's answer on direct examination as to what he had told the defendant was not, however, a complete disclosure of the consequences of the giving of a statement to the

---

[2]We shall assume that the defendant was in custody and that hence Miranda warnings were required. We shall also assume that defense counsel adequately preserved all aspects of this issue for appellate consideration.

It is unfortunate that the motion judge simply adopted the facts stated in the Commonwealth's opposition to allowance of the motion. See *Commonwealth* v. *Hawkesworth*, 405 Mass. 664, 669-670 (1989). On the other hand, the defendant concedes that what happened was uncontradicted.

police. His answer on cross-examination was substantially more complete.[3] What the officer said was not deceptive. Nor does the evidence indicate any intent to trick the defendant. The evidence fully warrants the motion judge's conclusion that the defendant voluntarily waived his Miranda rights.

2. When, in the course of cross-examination of Tousignant at trial, defense counsel asked him if he had taken notes of his November 14-15 interview of the defendant, Tousignant said that he had.[4] A judge had allowed the defendant's pretrial motion that the Commonwealth preserve all notes concerning the defendant. Tousignant testified that he did not have the notes of the November 14-15 interview with him. When counsel asked where the notes were, the prosecutor objected, and the judge conferred with counsel at the bench. Defense counsel said that he wanted to look at the notes to see if they were consistent with a filed police report. The prosecutor objected to conducting discovery in front of the jury. The judge ruled that defense counsel could not pursue the issue through the witness. The judge did not rule that the defendant was not entitled to production of Tousignant's notes. Defense counsel, however, made no such demand.[5]

The defendant argues that his cross-examination of Tousignant was impermissibly restricted. See *Commonwealth* v. *Repoza*, 382 Mass. 119, 125 (1980), *S.C.*, 400 Mass. 516, cert. denied, 484 U.S. 935 (1987). The November 14-15 interview was important because the defendant made arguably inculpatory statements and because of the evidence of the presence of occult blood. We shall assume that the defendant was entitled to see any notes of that interview (see *Common-*

---

[3]The defendant did not testify in support of his motion to suppress.

[4]Tousignant's testimony was not consistent with what he had testified to during the hearing on the motion to suppress the defendant's statements. There, on both cross-examination and redirect examination, Tousignant said that he had not taken any notes of the November 14-15 interview. He said that he had taken notes only of a November 19-20 interview of the defendant. He produced those notes at the suppression hearing.

[5]The defendant makes no claim that the prosecutor improperly failed to produce the notes at any earlier time.

*wealth* v. *Wilson*, 381 Mass. 90, 108-109 [1980]), but we cannot say that the judge abused his discretion in limiting cross-examination on the subject when he did, where the witness had testified that he did not have the notes with him. See *Commonwealth* v. *O'Connor*, 407 Mass. 663, 672 (1990). Nor is it possible on the record before us to determine, in fulfilment of our obligations under G. L. c. 278, § 33E, whether the defendant was significantly prejudiced by the failure of defense counsel to press for the production of the notes that Tousignant said he had taken.[6]

3. The defendant argues that the judge improperly restricted his attempt to show the bias of Paula Fournier, a prosecution witness who had testified that she had heard the defendant say that the victim carried a lot of cash and would be easy to rob. During the defendant's direct testimony, defense counsel asked about a conversation between Fournier and the defendant. In response to "What did you do?," the defendant testified, "[Fournier] was arguing about the rent and how she was trying to prolong paying the rent [to the defendant's mother]. My mother was arguing with her and she called my mother a slut."[7] The prosecutor objected, and the judge sustained the objection, telling the jury to disregard the answer as hearsay. The judge's striking of the answer was correct because it was not responsive. The problem was not, however, hearsay. It seems reasonably clear that the defendant's purpose was to show the witness's bias, not to

---

[6]The defendant filed a motion for a new trial after his appeal had been entered in this court. A single justice remanded the motion to the Superior Court for consideration and decision. Thereafter, an amended motion for a new trial was filed and denied by the trial judge. Although a notice of appeal from that denial was filed, no argument is presented to us challenging that denial. The matter of Tousignant's notes of the November 14-15 interview was not pursued in the motion for a new trial.

[7]Immediately after this testimony, a somewhat similar exchange occurred. The defendant gave another nonresponsive answer, when asked what Fournier had said to him. He testified that she then started kicking him. The judge struck the answer on the prosecution's objection. The evidence of kicking would have been admissible to show bias in response to a question properly directed to the fact of the kicking. There was no such question.

prove the truth of what she said. The defendant did not, however, seek admission of the evidence limited to the question of bias.

The defendant had a constitutional right to present evidence of bias through any competent means. See *Davis* v. *Alaska*, 415 U.S. 308, 316-317 (1974); *Commonwealth* v. *LaVelle*, 414 Mass. 146, 153 (1993); *Commonwealth* v. *Brown*, 394 Mass. 394, 397 (1985). There was no error because the testimony showing bias was properly struck as not responsive to the questions asked. We have considered whether, pursuant to G. L. c. 278, § 33E, there is a substantial likelihood of a miscarriage of justice in the failure of counsel to straighten out the admissibility of the bias evidence that we have just discussed. The fact of Fournier's bias was shown in other evidence and, therefore, the absence of the excluded evidence was not significantly prejudicial. See *Commonwealth* v. *LaVelle, supra* at 154-155.

4. The defendant challenges the judge's failure to give a requested instruction concerning the special care that the jury should apply in examining the testimony of an immunized witness, Barbara Peaslee, who testified to incriminating statements by the defendant.[8] Tousignant testified that he

---

[8]The defendant properly saved his appellate rights on this issue. The judge denied the written request during a charge conference and stated that the defendant's exception was saved. It was thus established at the charge conference that the judge would not give the requested instruction. The defendant, therefore, was not obliged to repeat his objection after the charge was given. See *United States* v. *Hollinger*, 553 F.2d 535, 541-543 (7th Cir. 1977); *Las Vegas Merchant Plumbers Ass'n* v. *United States*, 210 F.2d 732, 744-745 (9th Cir.), cert. denied, 348 U.S. 817 (1954). Contra *United States* v. *Parisien*, 574 F.2d 974, 976 (8th Cir.), cert. denied, 439 U.S. 850 (1978). Cf. *Bowley* v. *Stotler & Co.*, 751 F.2d 641, 647 (3d Cir. 1985); *Fey* v. *Walston & Co.*, 493 F.2d 1036, 1047 (7th Cir. 1974). Contra *Smith* v. *Massachusetts Inst. of Technology*, 877 F.2d 1106, 1109-1110 (1st Cir.), cert. denied, 493 U.S. 965 (1989) (notwithstanding whatever happened before charge to jury, objections to charge have force only if made after charge). The defendant in effect did comply with the requirement, stated in Mass. R. Crim. P. 24 (b), 378 Mass. 895 (1979), to object to the failure to instruct as requested. Cf. *Stepakoff* v. *Kantar*, 393 Mass. 836, 839-840 (1985) (trial judge approved procedure by which he said party's rights would be preserved). Nothing occurred between the

had told Peaslee in December, 1985, and in February, 1986, that, if she was withholding information about the death of the victim, she could be charged as an accessory after the fact to murder. He told her, and she testified that she understood, that, if she gave him a truthful account of what happened, she would not be charged.

The defendant argues that the judge was obliged to give an instruction directed to the promise not to prosecute Peaslee if she testified truthfully. We have found unfair prejudice in the manner of presentation to a jury of a written plea agreement in which the Commonwealth promised a particular sentencing recommendation in exchange for truthful testimony. *Commonwealth* v. *Ciampa*, 406 Mass. 257, 262-263 (1989). That case involved an arguable inference that the Commonwealth was vouching for the witness's truthfulness. *Id.* at 262. That is not true in this case. See *Commonwealth* v. *Evans*, *ante* 424, 427 (1993). There are other distinctions. The judge's instruction on credibility, including references to witnesses' interests in the outcome of the case and to their possible bias, was sufficient in the circumstances. See *Commonwealth* v. *Daye*, 411 Mass. 719, 739-740 (1992).

5. The defendant next argues that the judge failed to give the jury sufficient guidance for deciding whether they could consider incriminating statements attributed to the defendant. The judge properly charged that any such statement could be considered only if the jury found beyond a reasonable doubt that the defendant made the statement voluntarily. The judge added that the jury should consider the defendant's age, experience, and intelligence as well as the circumstances under which the statements were made. There was no objection to the charge, nor was there any request for a fuller exposition of the factors that might bear on the voluntariness issue. The defendant contends that the judge erred by not referring specifically to additional elements, such as the defendant's emotional stability, his physical and mental condi-

---

time of the judge's decision not to give the requested instruction and the conclusion of the charge to alter the circumstances.

tion, and the details of any interrogation, including the recitation of Miranda warnings. See *Commonwealth* v. *Mandile*, 397 Mass. 410, 413 (1986); *Commonwealth* v. *Williams*, 388 Mass. 846, 856-857 (1983). Although the instruction appropriately might have contained more detail, it was correct. We discern no substantial likelihood of a miscarriage of justice in the scope of the charge on voluntariness.

6. Finally, the defendant challenges the admission of testimony concerning what he said and did during a portion of the November 14-15 interview in the Lowell police station. After the defendant had tested positive for occult blood and had given what appeared to the police to be doubtful responses in explanation of the test results, Inspector Edward Murphy of the Lowell police department told the defendant that the reason he had blood on him was because he had been at the murder scene and assisted in the murder. The defendant, according to Tousignant, "kind of dropped his head." Then Murphy said, "[D]id you know when you set up the old guy . . . for the robbery that they were going to murder him?" According to Tousignant the defendant "had his head drop like that. Just said no," and "[s]hook his head like that." Then the defendant shot up and sat straight up and said, "No. I don't have anything to do with any murder or robbery."[9]

---

[9]The trial judge, who was not the motion judge, did not conduct a voir dire on the admissibility of this evidence. He based his decision to admit this evidence on material before the motion judge. We, therefore, recite the evidence of this incident presented at the suppression hearing.

Murphy's testimony at the hearing on the motion to suppress was different in detail but substantially the same. He testified as follows:

DEFENSE COUNSEL: "Did you ask [the defendant] a question pertaining to setting up this robbery attempt?"

THE WITNESS: "Yes. I asked him if he would just not talk and listen to me for a second so I could ask him a question. And I asked him: 'Did you ever think that when this set up was planned that this was what would happen to this man?' I pointed at the picture. He put his head down. He hesitated for the first time during all our conversations. He hesitated. He shook his head and said, 'no.' Then he hesitated another very short time and he picked his head and said: 'But I wasn't at the murder scene. I didn't do a murder. I don't know anything about it.' "

The defendant argues that the testimony should not have been admitted because it permitted an inference of an admission of guilt from the defendant's silence after he had received Miranda warnings. See *Commonwealth* v. *Nickerson*, 386 Mass. 54, 59 n.5 (1982); *Commonwealth* v. *Rembiszewski*, 363 Mass. 311, 316 (1973), *S.C.*, 391 Mass. 123 (1984). We reject the argument because the defendant's response, dropping his head, saying no, pausing, and then denying involvement, was not necessarily an admission by silence but rather could be seen collectively as an admission by word and deed. See *Commonwealth* v. *Reed*, 397 Mass. 440, 442 (1986). At the least, the challenged evidence was admissible as an equivocal response to an accusation of guilt. See *Commonwealth* v. *Cancel*, 394 Mass. 567, 570-571 (1985). If the defendant had merely hung his head and paused, and had not also said "no," his response would not have been admissible as an equivocal response. See *Commonwealth* v. *Harris*, 371 Mass. 462, 477 (1976).

The defendant's argument continues, challenging, as compounding error, the admission, without objection, of Tousignant's testimony concerning what next happened at the November 14-15 interview. After the defendant had sat up in his chair and said that he did not know anything about a murder, Tousignant told the defendant that he did not believe him. The defendant, Tousignant testified, became "noticeably nervous." The defendant then said, in response to a question, that he did not want to give a statement of the truth of what happened that day and that he did not want to talk any more at that time. The defendant challenges the admission of Tousignant's statement of opinion that he did not believe the defendant and argues that Tousignant's testimony invited the jury to infer guilt from the defendant's assertion of his right to remain silent.[10]

---

[10]The testimony probably came as a surprise to defense counsel because, at the hearing on the motion to suppress, Tousignant did not testify, as questions would have led him to do, to his statement of disbelief of the defendant or concerning the defendant's nervousness. No motion to strike the officer's testimony was made.

Tousignant's statement, in the course of a police interview, that he did not believe the defendant is not the same as the testimony of a witness at trial who impermissibly expresses an opinion about the credibility of another witness. See *Commonwealth* v. *Dickinson*, 394 Mass. 702, 706 (1985). On the other hand, such a charge of untruthfulness, standing alone, would not be admissible, and the probative value of the fact of the defendant's nervousness is so insubstantial that it would have been better if the evidence had not been admitted, if there had been an objection.[11] However, even if the charge and the defendant's response were inadmissible over objection, admission of the evidence did not create a substantial likelihood of a miscarriage of justice.

There is no implication of guilt to be found simply because a person, who had received Miranda warnings, decided that he wanted to terminate a police interview. Where, however, the evidence is that the decision to terminate followed a question whether that person wanted to give the police a truthful statement as to what happened on the day of a murder, an inference of an admission of guilt might be found in the decision to exercise one's constitutional right to remain silent. Cf. *Commonwealth* v. *Nickerson, supra* at 59-62 (barring use of pre-arrest silence for impeachment of defendant). The evidence should not have reached the jury. The defendant did not object, however, to the testimony, did not move that it be struck, and did not seek a curative instruction. Considering that any inference of an admission of guilt was not strong, that the evidence of the defendant's guilt was substantial, and that this testimony was a brief event in the course of a long trial, we conclude that the evidence of the defendant's decision to terminate the interview does not pre-

---

[11]It is true, however, that testimony concerning a defendant's demeanor is admissible in various circumstances. See *Commonwealth* v. *Shine*, 398 Mass. 641, 656 (1986), and cases cited.

sent a substantial likelihood of a miscarriage of justice. Cf. *Commonwealth* v. *Dickinson, supra* at 707.

*Judgments affirmed.*