## COMMONWEALTH *vs.* PEDRO F. TORRES.

Bristol. January 10, 1995. - June 12, 1995.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Practice, Criminal,* Instructions to jury, Reasonable doubt, Presumptions and burden of proof, Capital case. *Homicide. Intent. Malice. Due Process of Law,* Elements of criminal offense. *Self-Defense. Defense of Others.*

At a criminal trial the judge properly, within his discretion, denied the defendant's requested instruction that defined malice by linking it to the absence of mitigating factors. [484-485]

At a murder trial, the judge's error in instructing on malice using "frame of mind" language did not create a substantial likelihood of a miscarriage of justice when read in the context of the entire jury charge which adequately conveyed the concept of malice aforethought. [486-487]

At a murder trial, the judge's single use of the word "also" before describing the three prongs of malice did not, in the context of the charge as a whole, create a substantial risk of a miscarriage of justice. [487-488]

At a murder trial, error in the judge's instruction on reasonable provocation did not violate the defendant's Federal due process rights where it did not relieve the Commonwealth of its burden nor did it shift any burden to the defendant [488-490], nor, in the context of the charge as a whole, did it create a substantial likelihood of a miscarriage of justice [490-491].

At a murder trial, the judge's error in using the word "may" rather than "shall" in his instruction on self-defense and defense of another did not violate the defendant's due process rights where it did not relieve the Commonwealth of its burden [491-492], nor did it create a substantial likelihood of a miscarriage of justice where, on the evidence, the defendant was not entitled to such an instruction [492-493], and where the jury returned a verdict of murder in the first degree [493].

This court declined to exercise its power under G. L. c. 278, § 33E, to reduce a verdict from murder in the first degree to manslaughter. [493-494]

INDICTMENT found and returned in the Superior Court Department on January 28, 1991.

The case was tried before *William H. Carey*, J.

*Brownlow M. Speer* for the defendant.

*Mary O'Neil*, Assistant District Attorney, for the Commonwealth.

LIACOS, C. J. On November 21, 1991, a jury convicted the defendant of deliberately premeditated murder in the first degree. The trial judge sentenced the defendant to life imprisonment.[1] On appeal, the defendant asserts that the conviction must be reversed because of several alleged errors in the judge's instructions to the jury. He also requests that we exercise our power under G. L. c. 278, § 33E (1992 ed.), to reduce the verdict from murder in the first degree to manslaughter. We affirm the conviction. We see no reason to utilize our extraordinary power to reduce the conviction to that of manslaughter.

The jury heard evidence which would have warranted finding the following facts. During the evening of December 14, 1990, the defendant and his sister went to visit an individual who resided in a second-floor apartment over the Harborview Cafe, a bar located at 82 Potomska Street in New Bedford. Shortly after midnight, the defendant's sister and another woman went downstairs to purchase beer at the bar. When the sister returned, she told the defendant that the victim, Jose Fernandes, had bothered her while she was in the bar. The defendant then entered the bar and confronted the victim. The two men stepped outside and began to argue about improper remarks the victim allegedly had made to the defendant's sister. After the defendant pushed him, Fernandes pulled a knife from his rear pocket, placed it on the ground, and challenged the defendant to fight "man to man." The defendant indicated that he did not want to fight. Fernandes, the defendant, and his sister then returned to the bar.

---

[1] The jury also convicted the defendant of a firearm charge, for which he received a concurrent sentence of from three to five years. The defendant does not appeal from this conviction.

Shortly thereafter, Fernandes displayed the knife again and started to threaten the defendant's sister. The bartender yelled at Fernandes to stop, and Fernandes put away the knife. The defendant then pulled out a gun and fired three shots at Fernandes. The first shot, fired from a range of six to eighteen inches, hit the victim in the face. The other two shots entered the victim's back.[2] When the defendant realized that the bartender had telephoned the police, he ran out of the bar. He and his sister telephoned a taxi and returned home, where the defendant ate dinner and went to sleep.

Later that morning, an officer with the New Bedford police department arrested the defendant and transported him to the police station. On route to the station, the defendant asked the officer whether the victim had died. When the officer did not respond, the defendant asked whether the victim had "died right away, or did he talk to you cops." The officer advised the defendant of his Miranda rights and told him that if he wished to speak with the officer, he could do so at the police station. The defendant then stated that he wished to speak with the officer about the incident, and the victim "had no respect and deserved what he got." At the station, the officer booked the defendant and again advised him of his Miranda rights. The defendant then gave a statement. He claimed that the victim had a knife when the two men had been standing outside the bar. Once inside the bar, the defendant heard Fernandes threaten his sister. The sister shoved the victim, and the victim responded by pushing her in the face with his hand. At this point, the defendant walked over to Fernandes and shot him in the face. When Fernandes tried to run away, the defendant pursued him and shot him twice in the back. The defendant agreed to repeat this statement and have it videotaped. The videotape was admitted in evidence and viewed by the jury.[3]

---

[2]One bullet lodged in the victim's spinal canal, fracturing one vertebra and severing the spinal cord. The other bullet lodged in the "outer table" of the victim's skull.

[3]The videotaped statement was "basically" the same as the first statement. However, there were some discrepancies. For example, in the initial

The defense offered no evidence, conceding the homicide and defending solely on a theory of manslaughter, rather than murder in the first degree by deliberate premeditation, as the prosecution claimed.

I. *Jury instructions.* At the close of the evidence, defense counsel submitted a written request for jury instructions. During a charge conference, the judge, defense counsel, and the prosecutor discussed extensively the defendant's requested instructions, including instructions about malice, intent, mitigating circumstances, self-defense, and defense of another. At one point during the conference, the judge told defense counsel, "I'm not going to give the rest of that [requested instruction] under intention. So, you can note your exception to it." Before he finished instructing the jury, the judge asked the prosecutor and defense counsel if either party had any suggestions. Defense counsel asked the judge to give the jury two additional instructions that the defendant's conduct after the killing was not relevant to either premeditation or malice aforethought. The judge did so. Defense counsel made no other objection to the jury instructions.

On appeal, the defendant advances four claims of error relating to the jury instructions. The defendant first asserts that the judge erred in refusing to give the defendant's requested malice instruction, which defined malice by linking it to the mitigating circumstances raised by the evidence. The defendant next objects to the malice instruction actually given by the judge. The defendant's third and fourth claims involve the judge's instructions about reasonable provocation and excessive force in self-defense or defense of another.

We first consider whether the defendant adequately preserved his rights for appellate review. "It is a fundamental rule of practice that where a party alleges error in a charge he must bring the alleged error to the attention of the judge

statement, the defendant stated that the victim had put his knife away in his rear pocket before the defendant shot him. In the videotaped statement, the defendant first stated the same thing. He then recanted and stated that the victim may have had the knife out of his pocket at that time, and that the victim may have waved the knife around in the air.

in specific terms in order to give the judge an opportunity to rectify the error, if any." *Commonwealth* v. *Keevan*, 400 Mass. 557, 564 (1987), quoting *Commonwealth* v. *McDuffee*, 379 Mass. 353, 357 (1979). Rule 24 (b) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 895 (1979), provides that "[n]o party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, specifying the matter to which he objects and the grounds of his objection." In the absence of a proper objection, we review a challenged instruction to determine whether it created a "substantial likelihood of a miscarriage of justice." *Commonwealth* v. *Eagles*, 419 Mass. 825, 834 (1995). *Commonwealth* v. *Ferreira*, 417 Mass. 592, 595 (1994). *Commonwealth* v. *Burke*, 414 Mass. 252, 265 (1993). See G. L. c. 278, § 33E.

The defendant did not object specifically to the challenged instructions. He asserts nevertheless that the judge's declaration that defense counsel could note his exception to the judge's refusal to give the requested instruction on intention preserved for "normal appellate review" the defendant's claim that the judge erred in refusing to give the requested instruction on malice.[4] In making this argument, the defendant relies on *Commonwealth* v. *Grenier*, 415 Mass. 680 (1993). In that case, we concluded that a defendant had saved his appellate rights where he submitted a written instruction about a specific issue and the judge denied the written request during a charge conference and stated that the defendant's exception was saved. *Id.* at 686 n.8. We noted that the defendant was not obliged to repeat his objection after the charge in order to preserve the issue for appeal. *Id.* In this case, as in the *Grenier* case, the judge denied the defendant's written instruction concerning a specific issue —

---

[4] The defendant further contends that, despite his failure to object at trial, we should review his other three claims of error as if he had properly preserved them for appeal because he saved his appellate rights as to the judge's failure to give the requested malice instruction, and because these three alleged errors "flowed directly" from that error.

intention — and noted the defendant's exception to that denial. The defendant therefore preserved for appeal his objection to the judge's refusal to give the requested instruction about intention. However, the defendant did not save his appellate rights as to the judge's denial of the requested malice instruction or any of the three other claims of error. Thus, we evaluate each of the defendant's claims to determine whether the challenged instructions created a "substantial likelihood of a miscarriage of justice."

a. *The trial judge's refusal to give requested malice instruction.* Defense counsel submitted a written request for jury instructions that defined malice by linking it to the absence of mitigating factors. The judge did not give the requested instruction. On appeal, the defendant asserts that the judge's failure to give the requested malice instruction amounted to prejudicial error and violated the defendant's right to constitutional due process. We disagree.

We do not require that any specific words be spoken in a jury instruction. *Commonwealth* v. *Burke, supra* at 267. *Commonwealth* v. *Chasson,* 383 Mass. 183, 188 (1981). Judges need not deliver their instructions in any particular form of words, so long as all necessary instructions are given in adequate words. *Commonwealth* v. *Sinnott,* 399 Mass. 863, 878 (1987), citing *Commonwealth* v. *Martorano,* 355 Mass. 790 (1969). Although the judge may not have used the particular words requested by the defendant, he adequately explained the concept of malice aforethought.[5] Indeed, a review of the entire charge, including the portions

---

[5]The judge charged as follows: "[T]he Commonwealth must prove to you beyond a reasonable doubt that the killing was committed with malice aforethought. Malice aforethought refers to a frame of mind which includes not only anger, hatred, and revenge, but also every other unlawful or unjustifiable motive.

"It does not necessarily imply ill will towards the person killed. Any intentional killing of a human being without justification or excuse, with no extenuating circumstances which would reduce the crime to manslaughter, is malicious within the meaning of malice aforethought. Whether a killing is actually committed with malice aforethought is determined from the nature and quality of the act which attends the killing. If the circumstances attending a killing disclose that death flows from a purposeful, self-

concerning voluntary manslaughter and self-defense, clearly demonstrates that the charge conveyed that the Commonwealth had the burden of proving malice aforethought and the absence of any mitigating circumstances. The judge's charge contained the substance of what the defendant had requested, even though the judge did not use the defendant's exact wording. The judge properly acted within his discretion in denying the defendant's requested instruction and in choosing to explain mitigating circumstances later in the charge, rather than as part of his malice instruction. See *Commonwealth* v. *Pope,* 406 Mass. 581, 591 (1990); *Commonwealth* v. *Freiberg,* 405 Mass. 282, 303, cert. denied, 493 U.S. 940 (1989).

---

ish, wrongful motive as distinguished from human frailty, then that would constitute malice aforethought.

"Malice aforethought also includes an unexcused specific intent to kill, or an unexcused specific intent to do grievous bodily harm, or an unexcused intent to do an act creating a plain and strong likelihood that death or grievous bodily harm would follow. Malice aforethought may be inferred if, in the circumstances known to the defendant, a reasonably prudent person would have known that, according to common experience, there was a plain and strong likelihood that death or grievous bodily harm would follow the contemplated act.

"Malice may be inferred, also — it does not have to be — it may be inferred from the intentional use of a dangerous weapon. A dangerous weapon is any instrument which, by its construction or its use, is capable of causing death or grievous bodily harm, or one which could be perceived by a reasonable person to be so capable, and a gun may be considered a dangerous weapon. Malice may be inferred from the use of a dangerous weapon, but, again, it does not have to be. You need not, in other words, draw an inference of malice from the use of a dangerous weapon. It's entirely up to you to decide whether or not that inference is to be drawn.

"You may draw the inference of malice, however, only if the defendant used such force that, according to common experience, there was a plain and strong likelihood that death or grievous bodily harm would follow from the defendant's action; and the burden of proof, again, is upon the Commonwealth to prove that element beyond a reasonable doubt."

Although we conclude that in this case the judge adequately explained to the jury the concept of malice aforethought, we do not, for the reasons discussed in this opinion, approve of this instruction as a model malice instruction for use by trial judges. See *Commonwealth* v. *Eagles,* 419 Mass. 825, 836 (1995).

b. *Instruction on malice.* The defendant next contends that the malice instruction actually given by the judge was erroneous because the instruction effectively told the jury that the frame of mind in which the defendant claimed to have acted constituted malice and because it suggested to the jury alternative ways to find malice.[6] In support of this assertion, the defendant points to two sentences of the instruction. The judge began the instructions on malice by stating that "[m]alice aforethought refers to a frame of mind which includes not only anger, hatred, and revenge, but also every other unlawful or unjustifiable motive." Several sentences later, the judge added: "Malice aforethought also includes an unexcused specific intent to kill, or an unexcused specific intent to do grievous bodily harm, or an unexcused intent to do an act creating a plain and strong likelihood that death or grievous bodily harm would follow."

The defendant contends that the first sentence was highly prejudicial because it undercut one of his key defenses, namely that he had shot the victim "in a state of hot blood

---

[6]In his brief, the defendant argues that our decision in *Commonwealth v. Burke,* 414 Mass. 252 (1993), decided after the trial of the case at bar, supports his assertion that the judge erred in stating that "[m]alice aforethought refers to a frame of mind which includes not only anger, hatred, and revenge, but also every other unlawful or unjustifiable motive." In *Burke, supra* at 265, the judge used the "frame of mind" language and also stated that malice "is the intent to inflict injury without legal justification" and that malice aforethought exists where death results "from a purposeful, selfish, wrongful motivation." The judge deviated from the three prongs of malice language of *Commonwealth v. Grey,* 399 Mass. 469, 470 n.1 (1987). We concluded that the judge's malice instruction was erroneous, but that there was no substantial likelihood of a miscarriage of justice. *Commonwealth v. Burke, supra.*

Even if we were to assume that *Burke* has retroactive effect, our analysis in that case does not assist the defendant. In this case, although the judge did use the "frame of mind" language, he also defined malice by reference to the three prongs of malice. The instruction therefore was substantially similar to one approved by this court in *Commonwealth v. Ferreira,* 417 Mass. 592, 597-598 & n.7 (1994), a case not cited in the defendant's brief.

We note that, in light of our recent decision in *Commonwealth v. Eagles, supra,* judges should not use the "frame of mind" language when instructing juries about malice. Thus, we would not approve the *Ferreira* instruction as a model malice instruction for use by trial judges.

arising from the reasonable provocation of the victim's vile verbal and physical abuse of his sister" and therefore was guilty only of voluntary manslaughter. The defendant asserts that this sentence "effectively wiped out that defense, by making the mitigating circumstance on which [he] relied to show the *absence* of malice evidence of the *presence* of malice." Although we have agreed that judges should avoid the frequently stated definition linking malice to "a frame of mind which includes not only anger, hatred, and revenge, but also every other unlawful [or] unjustifiable motive," *Commonwealth* v. *Eagles, supra* at 836, we nevertheless conclude that the judge's use of that definition did not create a substantial likelihood of a miscarriage of justice. When read in the context of the entire jury charge, see *Commonwealth* v. *Carrion*, 407 Mass. 263, 270 (1990), it is clear that the instruction adequately explained to the jurors the concept of malice aforethought. The judge properly referred to the three prongs of malice described in *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). In addition, the judge emphasized that, if the Commonwealth did not prove malice beyond a reasonable doubt, the defendant could not be guilty of murder, but might be guilty of manslaughter. Furthermore, the judge repeatedly articulated the Commonwealth's burden to prove each element of the crimes charged and repeatedly stressed the defendant's presumption of innocence. The judge's use of the "frame of mind" language did not amount to reversible error.

The defendant also contends that the judge erred in prefacing his definition of the three prongs of malice with the words "also includes." He asserts that this instruction impermissibly suggested to the jury alternative ways to find malice, and that it allowed the jury to find malice "solely on the basis of the defendant's undisputed 'frame of mind . . . [of] anger, hatred, and revenge' " at the time of the killing.[7] Al-

---

[7]The defendant further asserts that, by using this language, the judge erroneously failed to "limit 'malice' to the 'three-pronged definition required by this court.' " Although we advise judges to define malice by reference to the three prongs described in *Commonwealth* v. *Grey, supra*, we

though we agree that the judge preferably would not have inserted the word "also" before describing the three prongs of malice, we conclude that, in the context of the entire instructions, the judge adequately conveyed to the jurors a correct definition of malice. The judge's use of the single extraneous "also" did not give rise to a substantial likelihood of a miscarriage of justice.

c. *Reasonable provocation instruction.* The defendant next asserts that, because the judge mingled correct with incorrect instructions regarding the mitigating circumstance of heat of passion, without any explanation of the "constitutionally infirm" instructions, the portion of the charge addressing "reasonable provocation" denied the defendant his Fourteenth Amendment due process rights.[8] We agree that the judge misstated the law when he instructed that "in order to prove the defendant guilty of voluntary manslaughter, the Commonwealth must prove . . . [that] the defendant injured the victim as a result of a sudden combat or in the heat of passion." Nevertheless, we conclude that the error did not vio-

---

do not require that a judge limit his malice instruction to that three-pronged definition. A trial judge has discretion to provide such additional explanation as may be appropriate to the jury's understanding of the charge. *Commonwealth* v. *Eagles, supra* at 836. *Commonwealth* v. *Silva,* 388 Mass. 495, 507 (1983) (trial judge has discretion "to choose the form of expression best adapted to make the law intelligible to the jurors"). See *Commonwealth* v. *Judge, ante* 433, 441-442 (1995) (charge of murder in the first degree based solely on deliberate premeditation may render irrelevant the theory of third prong of malice).

[8]While explaining voluntary manslaughter, the judge correctly stated that "[t]he Commonwealth has the burden of proving beyond a reasonable doubt . . . that the defendant did not act in the heat of passion or sudden provocation. You may not return a verdict of guilty of murder unless the Commonwealth met that burden." Several paragraphs later, the judge incorrectly stated that "in order to prove the defendant guilty of voluntary manslaughter, the Commonwealth must prove . . . beyond a reasonable doubt . . . [that] the defendant injured the victim as a result of a sudden combat or in the heat of passion." At the end of this section of the charge, the judge again correctly stated that "the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion."

late the defendant's Federal due process rights, nor did it create a substantial likelihood of a miscarriage of justice.

The due process clause of the Fourteenth Amendment to the United States Constitution "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Francis* v. *Franklin,* 471 U.S. 307, 313 (1985), quoting *In re Winship,* 397 U.S. 358, 364 (1970). This fundamental principle prohibits a judge from using "evidentiary presumptions in a jury charge that have the effect of relieving the State of its burden of persuasion beyond a reasonable doubt of every essential element of a crime." *Francis* v. *Franklin, supra.* See *Sandstrom* v. *Montana,* 442 U.S. 510, 520-524 (1979); *Commonwealth* v. *Lykus,* 406 Mass. 135, 143 (1989). In order to determine whether a jury instruction fails to meet constitutional muster, a reviewing court first must focus on the specific language challenged. *California* v. *Brown,* 479 U.S. 538, 541 (1987), citing *Francis* v. *Franklin, supra* at 315. If that language, considered in isolation, "could reasonably have been understood as creating a presumption that relieves the State of its burden of persuasion on an element of an offense," *Francis* v. *Franklin, supra,* then the reviewing court must examine the charge as a whole to see if the entire charge delivered a correct interpretation of the law. See *California* v. *Brown, supra* at 541. See also *Boyde* v. *California,* 494 U.S. 370, 378 (1990), quoting *Cupp* v. *Naughten,* 414 U.S. 141, 146-147 (1973) ("we accept at the outset the well-established proposition that a single instruction to a jury may not be judged in artificial isolation, but must be viewed in the context of the overall charge").

The defendant cites *Francis* v. *Franklin, supra,* in support of his claim. In that case, the United States Supreme Court stated that "[l]anguage that merely contradicts and does not explain a constitutionally infirm instruction will not suffice to absolve the infirmity" because "[a] reviewing court has no way of knowing which of the two irreconcilable instructions the jurors applied in reaching their verdict" (footnote omit-

ted). *Id.* at 322. *Francis* v. *Franklin* does not assist the defendant for two reasons. First, although, at one point, the judge misstated the Commonwealth's burden, we do not believe that the error had "the effect of relieving the [Commonwealth] of its burden of persuasion beyond a reasonable doubt of every essential element of [the] crime [charged]," *id.* at 313, nor did it shift any burden to the defendant. See *Sandstrom* v. *Montana, supra* at 520-524. The judge's misstatement, therefore, was not "constitutionally infirm." Second, even if we were to conclude that the instruction was constitutionally infirm, *Francis* v. *Franklin* accepts the general principle that such an instruction should be considered in the context of the entire charge. See *Estelle* v. *McGuire,* 502 U.S. 62, 72 (1991), quoting *Cupp* v. *Naughten,* 414 U.S. 141, 147 (1973) ("'instruction 'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole");[9] *Commonwealth* v. *Repoza,* 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987) ("jury instructions are not to be viewed in isolation but rather in the context of the charge as a whole").[10] Reviewing the whole

---

[9]In doing so, we bear in mind that "[j]urors do not sit in solitary isolation booths parsing instructions for subtle shades of meaning in the same way that lawyers might. Differences among them in interpretation of instructions may be thrashed out in the deliberative process, with common-sense understanding of the instructions in the light of all that has taken place at the trial likely to prevail over technical hairsplitting." *Boyde* v. *California,* 494 U.S. 370, 380-381 (1990).

[10]In *Commonwealth* v. *Repoza,* 400 Mass. 516, 519, cert. denied, 484 U.S. 935 (1987), citing *Francis* v. *Franklin,* 471 U.S. 307, 315 (1985), we noted that, in considering challenged instructions in the context of the entire charge, a reviewing court would assess "the possible impact of the error on the deliberations of a reasonable juror."

However, we note that the Supreme Court has adopted a different standard of review for jury instructions. In *Boyde* v. *California, supra* at 380, the Court also stated that the appropriate inquiry is "whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way" that violates the Federal Constitution. The Court reaffirmed this standard in *Estelle* v. *McGuire,* 502 U.S. 62, 72 n.4 (1991), and disapproved the "reasonable juror" standard of review language used in cases such as *Cage* v. *Louisiana,* 498 U.S. 39, 41 (1990), and *Yates* v. *Evatt,* 500 U.S. 391, 401 (1991).

charge, including the judge's emphatic and repeated statements that only the Commonwealth — and never the defendant — bore any burden, we believe that the jury could not have concluded that the judge's misstatement created an unconstitutional presumption relieving the State of its burden of persuasion beyond a reasonable doubt of every element of deliberately premeditated murder in the first degree.[11] The instruction did not violate the defendant's Federal due process rights, nor did it create a substantial likelihood of a miscarriage of justice.

d. *Instruction on excessive force in self-defense and defense of another.* The defendant's final claim of error involves the judge's instruction on excessive force in self-defense or defense of another. The judge instructed the jury:

> "If the Commonwealth fails to prove beyond a reasonable doubt that the defendant did not act in self-defense but the Commonwealth does prove beyond a reasonable doubt that the defendant used excessive force in defending himself or defending another in light of the circumstances and if death resulted from the use of that excessive force, then you *may* find the defendant guilty of manslaughter" (emphasis added).

---

[11]As we already have noted, see note 8, *supra*, during the voluntary manslaughter portion of the charge, the judge explicitly told the jury that "[t]he Commonwealth has the burden of proving beyond a reasonable doubt on the manslaughter consideration that the defendant did not act in the heat of passion or sudden provocation. You may not return a verdict of guilty of murder unless the Commonwealth met that burden." The judge also clearly stated that "where there is evidence of provocation, the Commonwealth has the burden of proving beyond a reasonable doubt that the defendant did not act in the heat of passion." In addition, the entire charge is replete with emphatic instructions as to the prosecution's burden and the defendant's presumption of innocence.

For these same reasons, we conclude that the judge's statement that "these mitigating circumstances, if they exist to your satisfaction, operate to negate the element of malice," did not impose on the defendant any burden to prove the mitigating circumstances that he claimed compelled a verdict of voluntary manslaughter rather than murder.

The defendant asserts that this instruction denied him Fourteenth Amendment due process because it left the jury "free not to return a manslaughter verdict despite reasonable doubt as to whether the defendant had acted in self-defense or defense of his sister but with excessive force."

We agree that, in the context of this case, the judge should have used the mandatory word "shall" rather than the permissive "may." However, we conclude that, in light of the entire charge, the judge's use of that single word did not violate the defendant's Federal due process rights because it did not in any way relieve the Commonwealth of its burden of persuasion beyond a reasonable doubt of every element of the crime charged. See *Francis* v. *Franklin, supra* at 313. See also *Commonwealth* v. *Giguere, ante* 226, 231 (1995). Nor did the instruction create a substantial likelihood of a miscarriage of justice. First, the defendant was not entitled to any instruction on self-defense or defense of another. Therefore, whatever the judge said concerning self-defense or defense of another, and the use of excessive force in self-defense or defense of another, was more favorable to the defendant than he deserved and could not have prejudiced his position. See *Commonwealth* v. *Curtis,* 417 Mass. 619, 632 (1994). A judge must instruct on self-defense in a homicide case if the evidence most favorable to the defendant warrants a reasonable doubt whether "the defendant: (1) had reasonable ground to believe and actually did believe that he was in imminent danger of death or serious bodily harm, from which he could save himself only by using deadly force, (2) had availed himself of all proper means to avoid physical combat before resorting to the use of deadly force; and (3) used no more force than was reasonably necessary in all the circumstances of the case." *Commonwealth* v. *Curtis, supra,* quoting *Commonwealth* v. *Harrington,* 379 Mass. 446, 450 (1980). In this case, there was no evidence that the defendant had reasonable ground to believe and actually did believe that he or his sister was in imminent danger of death or serious bodily harm such that his use of deadly force was justified. Nor was there any evidence that the defendant availed

himself of all proper means to avoid physical combat. The defendant had ample opportunity to leave the bar and avoid any further scuffle with the victim. Instead, the defendant shot the victim in the face and then shot him twice in the back as the victim attempted to flee.

Second, even if the defendant were entitled to such an instruction, our review of the record shows that the jury's verdict of deliberately premeditated murder in the first degree "would have been substantially unsullied" by any alleged error in the judge's instructions concerning excessive force in self-defense or defense of another. *Commonwealth* v. *Burke,* 414 Mass. 252, 267 (1993), quoting *Commonwealth* v. *Glass,* 401 Mass. 799, 804 (1988). In reaching this conclusion, we note that during the deliberations the jury asked the judge only one question: "a reclarification between murder in the first degree and murder in the second degree; i.e., deliberate premeditation." After the judge explained that distinction, the jury took only twenty minutes to reach a verdict of deliberately premeditated murder in the first degree. Any alleged error in the instructions concerning excessive force in self-defense or defense of another, therefore, did not create a substantial likelihood of a miscarriage of justice. See *Commonwealth* v. *Costa,* 414 Mass. 618, 627-628 (1993) (error in instruction on third prong of malice did not give rise to substantial likelihood of a miscarriage of justice "in light of the jury's finding the defendant guilty of murder in the first degree by reason of deliberate premeditation and extreme atrocity or cruelty").

II. *Review under G. L. c. 278, § 33E.* The defendant urges us to exercise our power under G. L. c. 278, § 33E, to reduce the verdict from murder in the first degree to manslaughter. He argues that the evidence tended to establish that the killing was not premeditated or carried out with malice aforethought, but instead occurred in the heat of passion on reasonable provocation. The defendant also contends that "[v]irtually all" of the factors present in past cases where we have reduced murder verdicts are present here, including that the victim "unquestionably" was the instigator

of trouble and that the gun used was a weapon of opportunity rather than of design. According to the defendant, these factors, in combination with the alleged errors in the jury instructions, "point to a conclusion that 'justice will be best served' if the verdict is reduced pursuant to G. L. c. 278, § 33E."

After reviewing the entire record, we decline to exercise our extraordinary power to reduce the verdict from murder in the first degree to manslaughter. The evidence showed that the defendant shot the victim in the face from a range of six to eighteen inches. When the victim attempted to flee, the defendant pursued him and shot him twice in the back. We are satisfied that the facts of this case fully support the jury's verdict of deliberately premeditated murder in the first degree.

*Judgment affirmed.*