**Pedro F. TORRES, Petitioner,**

v.

**Larry E. DUBOIS, Scott Harshbarger, Respondents.**

No. 98–1924.

United States Court of Appeals, First Circuit.

Heard Jan. 8, 1999.

Decided April 20, 1999.

Brownlow M. Speer, Committee for Public Counsel Services, Public Defender Division, was on brief, for petitioner.

Susanne Levsen, Assistant Attorney General, Criminal Bureau, with whom Scott Harshbarger, Attorney General, was on brief, for respondents.

Before TORRUELLA, Chief Judge, ALDRICH and CUDAHY,* Senior Circuit Judges.

TORRUELLA, Chief Judge.

Plaintiff-appellant Pedro F. Torres ("Torres") filed this petition for writ of habeas corpus under 28 U.S.C. § 2254. The sole issue before us is whether the jury instructions in Torres's state court murder trial violated his due process rights by impermissibly shifting the burden of proof. Like the district court before us, we find that the jury instructions did not violate Torres's due process rights under the Fourteenth Amendment, and we therefore affirm the district court's dis-

* Of the Seventh Circuit, sitting by designation.

missal of the petition for writ of habeas corpus.

## BACKGROUND

The events that led to the murder charge in this case are detailed in the prior decision of the Supreme Judicial Court of Massachusetts ("SJC"). *See Commonwealth v. Torres*, 420 Mass. 479, 651 N.E.2d 360 (1995). In brief, during the evening of December 14, 1990, the defendant and his sister went to visit an individual who resided in a second-floor apartment over the Harborview Café, a bar located in New Bedford. Shortly after midnight, the defendant's sister and another woman went downstairs to purchase beer at the bar. When the sister returned, she told the defendant that the victim, José Fernándes, had bothered her while she was in the bar. The defendant then entered the bar and confronted the victim. The two men stepped outside and began to argue about improper remarks the victim allegedly had made to the defendant's sister. After the defendant pushed him, Fernándes pulled a knife from his rear pocket, placed it on the ground, and challenged the defendant to fight "man to man." The defendant indicated that he did not want to fight. Fernándes, the defendant, and his sister then returned to the bar.

Shortly thereafter, Fernándes displayed the knife again and started to threaten the defendant's sister. The bartender yelled at Fernándes to stop, and Fernándes put away the knife. The defendant then pulled out a gun and fired three shots at Fernándes. The first shot, fired from a range of six to eighteen inches, hit the victim in the face. The other two shots entered the victim's back. When the defendant realized that the bartender had telephoned the police, he ran out of the bar. He and his sister telephoned a taxi and returned home, where the defendant ate dinner and went to sleep.

Later that morning, an officer with the New Bedford police department arrested the defendant and transported him to the police station. On route to the station, the defendant asked the officer whether the victim had died. When the officer did not respond, the defendant asked whether the victim had "died right away, or did he talk to you cops." The officer advised the defendant of his Miranda rights and told him that if he wished to speak with the officer, he could do so at the police station. The defendant then stated that he wished to speak with the officer about the incident, and that the victim "had no respect and deserved what he got." At the station, the officer booked the defendant and again advised him of his Miranda rights. The defendant then gave a statement. He claimed that the victim had a knife when the two men had been standing outside the bar. Once inside the bar, the defendant heard Fernándes threaten his sister. The sister shoved the victim, and the victim responded by pushing her in the face with his hand. At this point, the defendant walked over to Fernándes and shot him in the face. When Fernándes tried to run away, the defendant pursued him and shot him twice in the back. The defendant agreed to repeat this statement and have it videotaped. The videotape was admitted in evidence and viewed by the jury.

The defense offered no evidence, conceding the homicide and defending solely on a theory of manslaughter, rather than murder in the first degree by deliberate premeditation, as the prosecution claimed. The jury convicted the defendant of premeditated murder in the first degree, and the trial judge sentenced him to life imprisonment.

Torres appealed, asserting several alleged errors in the judge's instructions to the jury. The Supreme Judicial Court affirmed his conviction, *see id.*, and Torres brought this petition for writ of habeas corpus in the district court for the district of Massachusetts. The district court found that the jury instructions did not violate Torres' due process rights. However, the district court issued a certificate

of appealability on the issue of whether the trial judge's jury instructions improperly shifted the burden of proof. This appeal ensued.

## DISCUSSION

### I. Procedural Default

█ Federal habeas review is precluded if the state court reached its decision on an adequate and independent state-law ground when affirming Torres's conviction. *See Burks v. Dubois,* 55 F.3d 712, 716 (1st Cir.1995) (citing *Coleman v. Thompson,* 501 U.S. 722, 729, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991); *Harris v. Reed,* 489 U.S. 255, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989); and *Ortiz v. Dubois,* 19 F.3d 708, 714 (1st Cir.1994)). One such ground in this case may be Massachusetts' "contemporaneous objection" rule. *Commonwealth v. Fluker,* 377 Mass. 123, 385 N.E.2d 256 (1979) (failure to object specifically to trial deficiency "precludes appellate review"); *see also McLaughlin v. Gabriel,* 726 F.2d 7, 8 (1st Cir.1984) (in Massachusetts, "defendant normally cannot challenge an allegedly defective charge unless he has objected to the specific instruction at trial"). Torres did not object to the giving of the contested jury instruction at trial.

█ Generally, a federal habeas court defers to a state court's articulation of a state law ground for a decision. *See Brewer v. Marshall,* 119 F.3d 993, 999 (1st Cir.1997). However, when the state decision "fairly appears to rest primarily on federal law or to be interwoven with federal law," the federal court presumes there is no independent and adequate state ground for the decision. *Brewer,* 119 F.3d at 999–1000 (citing *Coleman,* 501 U.S. at 733, 111 S.Ct. 2546) (internal quotation marks and citation omitted). Here, it is abundantly clear that the Supreme Judicial Court's affirmance rested primarily on federal case law. *See Torres,* 651 N.E.2d at 366–68. Because the resolution of Torres's claim was not based on an independ-

dent and adequate state ground, his claim is not in procedural default.

### II. Clearly Established Federal Law

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104–132, Title I, § 104, 110 Stat. 1219, governs the issuance of writs of habeas corpus. It states in part that:

(d) [a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

█ First, we must determine whether "the Supreme Court has prescribed a rule that governs the petitioner's claim." *O'Brien v. Dubois,* 145 F.3d 16, 24 (1st Cir.1998). If so, we analyze whether the state court decision is "contrary to" that prescribed rule. *See id.* "To obtain relief ... [the] petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court." *Id.* at 24–25. Because we agree with the parties that *Francis v. Franklin,* 471 U.S. 307, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985), provides the governing rule, our discussion centers on that Supreme Court case.

In *Franklin,* the Supreme Court evaluated jury instructions stating that: (1) "[t]he acts of a person of sound mind and discretion are presumed to be the product

of the person's will, but the presumption may be rebutted," *id.* at 309, 105 S.Ct. 1965, and (2) "[a] person of sound mind and discretion is presumed to intend the natural and probable consequences of his acts but the presumption may be rebutted." *Id.* At issue was "whether these instructions, when read in the context of a jury charge as a whole, violate the Fourteenth Amendment's requirement that the State prove every element of a criminal offense beyond a reasonable doubt." *Id.* Because these jury instructions directed "the jury to presume an essential element of the offense," *id.* at 316, 105 S.Ct. 1965, they undermined "the factfinder's responsibility at trial, based on evidence adduced by the State to find the ultimate facts beyond a reasonable doubt." *Id.*

■ Here, Torres complains that the judge's instruction on mitigating circumstances created an evidentiary presumption that had the effect of relieving the Commonwealth of its burden to prove beyond a reasonable doubt each element of the crime charged against the petitioner. The contested instruction is as follows:

> The crime of manslaughter involves certain mitigating circumstances which I will outline for you, and these mitigating circumstances, *if they exist to your satisfaction,* operate to negate the element of malice.

(Emphasis added). As demonstrated in the quotation from the SJC's opinion, *see supra* at 46, the state court recognized that this instruction was a misstatement of the law, but the instruction did not constitute error under *Franklin* because: (1) it did not relieve the Commonwealth of proving beyond a reasonable doubt each element of the offense charged, and (2) it did not inappropriately shift any burden of proof to the petitioner. We agree with the district court in this case that "[t]he instruction merely pointed out that the jury could find the lesser included offense of manslaughter if the jury found, in the evidence, circumstances which mitigated one of the elements of murder." Consequent-

ly, the petitioner has failed to show that Supreme Court precedent requires an outcome contrary to that reached by the Supreme Judicial Court.

## CONCLUSION

For the reasons stated above, the judgment of the district court is **AFFIRMED**.